1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAUL MARIN-SALAZAR,

                              Petitioner,

          v.

NATHALIE R. ASHER, Field Office Director,
Immigration and Customs Enforcement, et al.,

                              Respondents.

Case No. C13-96-MJP-BAT

**REPORT AND
RECOMMENDATION**

Petitioner Saul Marin-Salazar, an alien detained in connection with removal proceedings and currently confined at the Northwest Detention Center, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his pre-removal period mandatory detention pursuant to 8 U.S.C. § 1226(c).  Dkt. No. 4.  Respondents have moved to dismiss this case, arguing that petitioner is lawfully detained under 8 U.S.C. § 1226(c) based on his 2001 and 2002 convictions for possession of a controlled substance.  Dkt. No. 15.

For the reasons set forth below, the Court recommends that petitioner's petition for writ of habeas corpus be GRANTED, and respondents' motion to dismiss be DENIED.

I.          **FACTUAL AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Mexico who entered the United States without inspection on or about April 1, 1992.  Administrative Record ("AR") L9, L79, R182.  On

1    October 17, 2001, petitioner pled guilty to the offense of possession of marijuana in Riverside

2    County, California.  AR R155-59.  The court deferred judgment for up to three years and ordered

3    petitioner to participate in a drug diversion program.  *Id.*  On June 28, 2002, while his first

4    sentence was pending, petitioner pled guilty to the offense of possession of methamphetamine in

5    the same court, and was sentenced to two concurrent 90-day jail sentences, to be served on

6    weekends.  AR 177-80.

7            On September 28, 2012, Immigration and Customs Enforcement ("ICE") agents

8    detained petitioner while conducting surveillance on a different alien at an apartment complex in

9    Seattle, Washington.  AR R182.  ICE issued a Notice to Appear, charging  petitioner with being

10   removable from the United States under 8 U.S.C. § 1182(a)(6)(A)(i), which provides for removal

11   of an alien who is present in the United States without being admitted or paroled, and under 8

12   U.S.C. § 1182(a)(2)(A)(i)(II), which provides for removal of an alien who has been convicted of

13   an offense relating to a controlled substance.  AR L10-12.

14           On October 23, 2012, petitioner appeared with counsel before an Immigration Judge and

15   requested bond pursuant to 8 U.S.C. § 1226(a).  The Immigration Judge determined that the

16   court lacked jurisdiction over petitioner's request for bond redetermination because petitioner

17   was subject to mandatory detention under 8 U.S.C. § 1226(c).  AR L136.  Petitioner did not

18   appeal the Immigration Judge's bond decision to the Board of Immigration Appeals ("BIA").

19   Petitioner remains detained pending removal proceedings.

20           On January 17, 2013, petitioner filed a petition for writ of habeas corpus, challenging the

21   lawfulness of his mandatory detention.  Dkt. No. 4.  On February 19, 2013, respondents filed a

22   return memorandum and motion to dismiss.  Dkt. No. 12.  Petitioner filed a response on March

23   11, 2013, Dkt. No. 15, and respondents filed a reply on March 15, 2013.  Dkt. No. 16.

REPORT AND RECOMMENDATION- 2

## II.      DISCUSSION

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of aliens in removal proceedings.  Section 1226(a) grants the Attorney General discretionary authority to determine whether an alien should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the alien falls within one of the categories of aliens described in section 1226(c), for whom detention is mandatory.  8 U.S.C. § 1226(a), (c).  Pursuant to section 1226(c)(1),

> The Attorney General shall take into custody any alien who [has committed one of the specified criminal offenses] <u>when the alien is released</u>, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).  "The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides . . . that release of the alien from custody is necessary" to protect a witness in a criminal matter.  8 U.S.C. § 1226(c)(2).  Unlike aliens who are detained under § 1226(a), aliens detained under § 1226(c) are not entitled to a bond hearing and are not provided the opportunity to show that their detention is unnecessary because they are not a danger to the community or a flight risk.  *See Casas-Castrillon v. DHS*, 535 F.3d 942, 946 (9th Cir. 2008).

At issue is the meaning of the phrase "when the alien is released."  Petitioner argues that he is not subject to pre-removal period mandatory detention under 8 U.S.C. § 1226(c) because ICE did not take him into immigration custody when he was released from criminal incarceration for an offense underlying his present removal charges, but took him into custody on September 28, 2012, nearly a decade later.  Therefore, petitioner asserts that he is eligible for release on bond while his immigration proceedings are pending pursuant to § 1226(a).  In support of this

REPORT AND RECOMMENDATION- 3

1   argument, petitioner cites several decisions from this Court which found – under the plain

2   meaning of the statute – § 1226(c) requires mandatory detention only "when the alien is

3   released" from incarceration on the underlying offense.  *See Castillo v. ICE Field Office*

4   *Director*, __ F. Supp. 2d __, 2012 WL 5511716 (W.D. Wash. 2012); *Quezada-Bucio v. Ridge*,

5   317 F. Supp. 2d 1221 (W.D. Wash. 2004) (holding that "the mandatory detention statute, INA §

6   236(c), does not apply to aliens who have been taken into immigration custody several months or

7   years after they have been released from state custody"); *Pastor-Camarena v. Smith*, 977 F.

8   Supp. 1415 (W.D. Wash. 1997) (holding that the plain meaning of the statute indicates that 8

9   U.S.C. § 1226(c) applies to aliens immediately after release from custody, and not to aliens

10  released many years earlier).

11          Respondents argue that despite not being taken into immigration custody immediately

12  following his release from criminal custody relating to his methamphetamine conviction, he is

13  subject to mandatory detention under § 1226(c) and is not entitled to a bond hearing.

14  Respondents contend that the Court's decision in *Quezada-Bucio* was wrongly decided, and urge

15  the Court to consider the Fourth Circuit's decision in *Hosh v. Lucero*, 680 F.3d 375 (4th Cir.

16  2012), which found the "when the alien is released" language to be ambiguous and deferred to

17  the BIA's interpretation of the statute in *Matter of Rojas*, 23 I & N Dec. 117, 125 (BIA 2001)

18  (holding that mandatory detention applies no matter when the alien is taken into custody).

19          In reviewing an agency's construction of a statute, courts apply the test set forth in

20  *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  A court

21  must first examine the text of the statute to determine whether Congress has spoken directly on

22  the issue.  *See Contract Management, Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 & n. 2 (9th Cir.

23  2006).  If the intent of Congress is clear from the text of the statute, a court need inquire no

REPORT AND RECOMMENDATION- 4

1   further and must follow the expressed intent of Congress. *Id*. at 1146-47.  If, however, the

2   statute is silent or ambiguous on the specific issue, a court must determine whether the agency's

3   interpretation is based on a permissible construction of the statute. *Id*. at 1147.  If so, the Court

4   defers to the agency's determination. *Id*.

5          Although the Ninth Circuit has yet to rule on this issue, the phrase "when the alien is

6   released" has been the subject of statutory interpretation in several previous cases, including two

7   published decisions by this Court. *See Quezada-Bucio*, 317 F. Supp. 2d at 1221; *Pastor-*

8   *Camarena*, 977 F. Supp. at 1415; *see also Castillo*, __ F. Supp. 2d __, 2012 WL 5511716 *3;

9   *Snegirev v. Asher*, 2013 WL 942607 (W.D. Wash. 2013).  In each case, the Court has reached the

10  same conclusion.  "Interpreting this statutory language, this Court has repeatedly held that

11  Congress intended mandatory detention to apply only to those aliens taken into immigration

12  custody immediately after their release from state custody." *Castillo*, __ F. Supp. 2d __, 2012

13  WL 5511716 at *3 (citing *Quezada-Bucio*, 317 F. Supp. 2d at 1228; *Pastor-Camarena*, 977 F.

14  Supp. at 1417).  As the Court in *Quezada-Bucio* explained,

15         'the clear language of the statute indicates that the mandatory detention of aliens
           'when' they are released requires that they be detained at the time of release.
16         *Alikhani*, 70 F. Supp. 2d at 1130. . . . [I]f Congress had intended for mandatory
           detention to apply to aliens at any time after they were released, it could easily
17         have used the language 'after the alien is released," 'regardless of when the alien
           is released,' or other words to that effect.  Instead Congress chose to use the word
18         'when,' which connotes a much different meaning.

19  *Quezada-Bucio*, 317 F. Supp. 2d at 1230.  The Court further found that the legislative history

20  demonstrates an intent for detention upon an alien's release.

21         In explaining the various passages of IIRIRA, the legislature stated that
           mandatory detention was meant to apply "whenever such an alien is released from
22         imprisonment, regardless of the circumstances of the release."  House Conf. Rpt.
           No. 104-828 at 210-11 (Sept. 24, 1996).  Presumably, with that comment, the
23         legislature was seeking to thwart arguments by aliens that because they were
           subject to parole or other community supervision they could not be taken into

immediate immigration detention because that would result in a violation of their imposed conditions.  The Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody.

*Id*.

The Court is not persuaded by the Fourth Circuit's decision in *Hosh* to defer to the BIA's interpretation of § 1226(c).  The Supreme Court has held that the federal courts should defer to an agency decision only if the statute, "applying the normal 'tools of statutory construction,' is ambiguous."  *INS v. St. Cyr*, 533 U.S. 289, 307 (2001) (citing *Chevron*, 467 U.S. at 843 n.9).  As determined above, the Court need not defer to the BIA's interpretation of § 1226(c) because the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody.  While respondents submit that "when . . . released" is susceptible to another interpretation, this Court will continue to rely on its plain, unambiguous meaning.  *See Castillo*, __ F. Supp. 2d __, 2012 WL 5511716 at *3; *Quezada-Bucio*, 317 F. Supp. 2d at 1228; *Pastor-Camarena*, 977 F. Supp. at 1417.  Accordingly, the Court finds that this statutory language does not provide respondents license to hold petitioner in mandatory detention because he was not taken into immigration custody when he was released from incarceration on the underlying offense.  Instead, petitioner's pre-removal period detention is governed by § 1226(a), which authorizes an Immigration Judge to release him on bond or conditional parole if he poses neither a flight risk nor a danger to the community.  *See Matter of Patel*, 15 I&N Dec. 666 (BIA 1976).

Respondents also argue that the "when the alien is released" language in 8 U.S.C. § 1226(c) is "an aspirational or 'hortatory' deadline only," and thus does not limit the government's ability to detain aliens in cases of noncompliance.  Citing various Supreme Court decisions involving government deadlines, respondents contend that an agency does not lose its

power to act in cases of noncompliance unless the statute specifies a sanction for missing the deadline. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 63 (1993); *Brock v. Pierce County*, 476 U.S. 253, 263 (1986); *French v. Edwards*, 80 U.S. 506, 511 (1872). According to respondents, "[b]y ordering a bond hearing conducted pursuant to Section 1226(a), . . . the Court would be improperly sanctioning the government for missing a hortatory deadline by replacing one statutory scheme with another." Dkt. No. 12 at 12.

In *Hosh*, the Fourth Circuit agreed with this argument, finding that "§ 1226(c) does not specify any consequence for the Government's failure to detain a criminal alien immediately upon release, and therefore even if 'the duty is mandatory, the sanction for breach is not loss of all later powers to act.'" *Hosh*, 680 F.3d at 382 (quoting *United States v. Montalvo-Murillo*, 495 U.S. 711, 718 (1990)). This Court has examined each of the cited cases, but fails to be convinced that a plain reading of the "when . . . released" language would result in an improper sanction against the government for failing to meet a hortatory deadline.

In *Montalvo-Murillo*, the Supreme Court considered whether the government was required to release a criminal defendant after it failed to provide a detention hearing "immediately upon the [suspect's] first appearance before a judicial officer" pursuant to 18 U.S.C. § 3142(f). *Montalvo-Murillo*, 495 U.S. at 713-714. The Supreme Court held that the "failure to comply with the first appearance requirement does not defeat the Government's authority to seek detention of the person charged." *Id*. at 717. *Montalvo-Murillo*, however, is completely inapposite to the case at bar. In that case, the defendant had argued that the failure to provide a timely bond hearing required his immediate release even though the district court had concluded "that no condition or combination of conditions reasonably would assure [his]

REPORT AND RECOMMENDATION- 7

1   appearance or the safety of the community." *Id*. at 716.  By contrast here, petitioner does not

2   demand his immediate release nor does he seek to foreclose the government's ability to detain

3   him.  Rather, petitioner seeks an individualized bond hearing where he may show that he is not a

4   danger to the community or a flight risk.

5           As indicated above, § 1226(a) begins with the default premise that every alien detained

6   by the Attorney General is entitled to an individualized bond hearing before an Immigration

7   Judge unless the alien falls within the exception set forth in § 1226(c).  For the exception to

8   apply, two requirements must be met.  First, the alien must have committed an offense specified

9   in § 1226(c)(1)(A)-(D).  Second, the alien must have been taken into custody "when the alien is

10  released" from criminal custody.  8 U.S.C. § 1226(c).  Read together, these provisions

11  unambiguously provide for the release of aliens arrested for immigration violations on bond or

12  on their own recognizance, except for the limited class of aliens subject to mandatory detention.

13          The failure to detain a criminal alien "when . . . released" does not mean the government

14  has no power to act.  Aliens who are not subject to § 1226(c) are, by default, subject to pre-

15  removal period detention under § 1226(a), which prohibits the release of aliens who are a danger

16  to the community or a flight risk.  *See Matter of Patel*, 15 I&N Dec. at 666.

17          Thus, if this Court holds that petitioner is not subject to mandatory detention under §

18  1226(c) because ICE did not take him into custody when he was released from incarceration on

19  the underlying offense, such a ruling means that the Immigration Judge will conduct a bond

20  hearing pursuant to § 1226(a), and petitioner will be released only if he shows by clear and

21  convincing evidence that he poses neither a danger to the community nor a flight risk.  Because

22  the government retains discretionary authority to detain criminal aliens under § 1226(a), a plain

23  reading of § 1226(c) does not result in a improper sanction on the government.

REPORT AND RECOMMENDATION- 8

### III.    CONCLUSION

Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c) because that section only requires mandatory detention "when the alien is released" from incarceration on the underlying offense.  Rather, petitioner's detention is governed by 8 U.S.C. § 1226(a) which authorizes an Immigration Judge to release him on bond or conditional parole if he poses neither a flight risk nor a danger to the community.  Therefore, the Court recommends that petitioner's petition for writ of habeas corpus be **GRANTED**, respondents' motion to dismiss be **DENIED**, and that petitioner be provided with an individualized bond hearing before an Immigration Judge pursuant to the general release terms of 8 U.S.C. § 1226(a).  A proposed Order accompanies this Report and Recommendation.

Any objections to this Recommendation must be filed and served upon all parties no later than **April 4, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **April 5, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this 21st day of March, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 9